687 N.W.2d 329 (2004)
263 Mich. App. 62
FEDERATED INSURANCE COMPANY and Carl M. Schultz, Inc., Plaintiffs-Appellants,
v.
OAKLAND COUNTY ROAD COMMISSION, Defendant-Appellee.
Docket No. 244009.
Court of Appeals of Michigan.
Submitted February 11, 2004, at Detroit.
Decided July 13, 2004, at 9:05 a.m.
Released for Publication September 29, 2004.
*330 Secrest, Wardle, Lynch, Hampton, Truex and Morley (by Michael L. Updike), Farmington Hills, for the plaintiff.
Clark Hill PLC (by Elizabeth Jolliffe Basten and Paul C. Smith), Detroit, for the defendant.
Before: NEFF, P.J., and WILDER and KELLY, JJ.
WILDER, J.
In this case arising from a claim filed under the environmental remediation part of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.20101 et seq., for recovery of costs associated with the cleanup of certain real property, plaintiff Federated Insurance Company (Federated), subrogee of plaintiff Carl M. Schultz, Inc. (Schultz), appeals as of right from the trial court's opinion and order granting summary disposition for defendant Oakland County Road Commission (road commission) under MCR 2.116(C)(7). We affirm.

I
In February 1988, an underground storage tank and piping on property owned by Schultz released petroleum onto that property, contaminating the soil with benzene, toluene, ethyl benzene, and xylenes. Federated insured the property. In May 1988, the Michigan Department of Natural Resources (MDNR) directed Schultz to take all corrective action needed to remediate any environmental damage occurring because of the release. To this end, Schultz hired a contractor that began construction of an on-site treatment system in November 1991. Schultz submitted a Site Investigation Report and a Site Investigation Work Plan to the MDNR in February 1992. Shortly thereafter, the treatment system commenced operations. On January 22, 1993, the MDNR approved the work plan.
The road commission owns and maintains a garage facility adjacent to the Schultz property at 1100 S. Lapeer Road. In April and May 1991, petroleum (diesel *331 and gasoline) had been released on the road commission property. This release was reported by the road commission to the Michigan State Police Fire Marshall. In January 1992, both Federated and Schultz suspected migration of the road commission release onto the Schultz property, and Federated conducted an investigation of this possibility through 1993 and 1994. In February 1995, the MDNR concluded that at least some of the petroleum detected on the Schultz property had migrated from the road commission property. In September 1996, Federated notified the road commission that as the subrogee of Schultz, it intended to bring a cost recovery action against the road commission because of the alleged migrating contamination. In October 1997, Federated sought, but did not obtain, the road commission's agreement to enter into a tolling agreement to avoid imminent litigation over the contamination question. Federated filed suit on November 1, 2000, under the NREPA for past and future remediation costs associated with releases occurring on the road commission property.
The road commission moved for summary disposition pursuant to MCR 2.116(C)(7), arguing that plaintiff's action was barred by the statute of limitations provided in MCL 324.20140(1)(a). Section 20140 of the NREPA states in relevant part:
(1) Except as provided in subsections (2) and (3), the limitation period for filing actions under this part is as follows:
(a) For the recovery of response activity costs and natural resources damages pursuant to section 20126a(1)(a), (b) or (c), within 6 years of initiation of physical on-site construction activities for the remedial action selected or approved by the department at a facility....
The road commission asserted that because Schultz had initiated physical, on-site construction activities related to remediation in 1991, the statute of limitations for the cost recovery action by Federated expired in 1997. Federated opposed the motion, contending that, because it did not receive proof that the petroleum spill on the road commission property had migrated to the Schultz property until February 1995, the statute of limitations was tolled until its discovery of that information.
The trial court granted the summary disposition motion, noting in part:
A plain reading of the statute shows that the triggering event is the "initiation of physical on-site construction activities." Thus, it is the starting of construction activities to clean up the site, which starts the running of the limitations period.
Here, Plaintiff initiated "physical on-site construction activities" by at least November 1, 1991, when it erected the building used to house the on-site treatment system. This remedial action was approved by the MDNR on January 22, 1993. Therefore, Defendant is correct that Plaintiff had until November 1, 1997 to timely file a complaint against Defendant for recovery of response activity costs. This fact was known to Plaintiff as evidenced by its seeking a tolling agreement from Defendant. Moreover, even if the Court were to determine that the triggering event for the statute of limitations was the MDNR's approval of Schultz's remedial action plan, Plaintiff's claim was still late by almost two years.
Federated now appeals.

II
This Court reviews de novo a trial court's grant of summary disposition. Spiek v. Dep't of Transportation, 456 Mich. 331, 337, 572 N.W.2d 201 (1998).

*332 When reviewing a motion for summary disposition under MCR 2.116(C)(7), a court must accept as true the plaintiff's well-pleaded factual allegations and construe them in the plaintiff's favor. The court must look to the pleadings, affidavits, or other documentary evidence to determine whether there is a genuine issue of material fact. If no facts are in dispute, and reasonable minds could not differ on the legal effect of those facts, whether the plaintiff's claim is barred by the statute of limitations is a question for the court as a matter of law. However, if a material factual dispute exists such that factual development could provide a basis for recovery, summary disposition is inappropriate. [Guerra v. Garratt, 222 Mich.App. 285, 289, 564 N.W.2d 121 (1997), quoting Baker v. DEC Int'l, 218 Mich.App. 248, 252-253, 553 N.W.2d 667 (1996) (citations omitted).]
In addition, statutory construction is a question of law that this Court reviews de novo. Eggleston v. Bio-Medical Applications of Detroit, Inc., 468 Mich. 29, 32, 658 N.W.2d 139 (2003).

III
The trial court did not err by granting summary disposition in favor of the road commission. The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature as expressed in the statutory language. Gladych v. New Family Homes, Inc., 468 Mich. 594, 597, 664 N.W.2d 705 (2003). If the plain meaning of the language is clear, judicial construction is neither necessary nor permitted. Sun Valley Foods Co. v. Ward, 460 Mich. 230, 236, 596 N.W.2d 119 (1999). "[C]ourts may not speculate about an unstated purpose where the unambiguous text plainly reflects the intent of the Legislature." Pohutski v. City of Allen Park, 465 Mich. 675, 683, 641 N.W.2d 219 (2002). "Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent." Sun Valley Foods Co, supra at 236, 596 N.W.2d 119.
Section 20101 of the NREPA defines terms found in part 201 of the NREPA that are relevant to our resolution of the question before us. Section 20101(cc) provides:
"Remedial action" includes, but is not limited to, cleanup, removal, containment, isolation, destruction, or treatment of a hazardous substance released or threatened to be released into the environment, monitoring, maintenance, or the taking of other action that may be necessary to prevent, minimize, or mitigate injury to the public health, safety, or welfare, or to the environment.
Section 20101(dd) provides that "`[r]emedial action plan' means a work plan for performing remedial action under this part." Section 20101(ee) provides:
"Response activity" means evaluation, interim response activity, remedial action, demolition, or the taking of other actions necessary to protect the public health, safety, or welfare, or the environment or the natural resources. Response activity also includes health assessments or health effect studies carried out under the supervision, or with the approval of, the department of public health and enforcement actions related to any response activity.
Under § 20101(ff), "`[r]esponse activity costs' or `costs of response activity' means all costs incurred in taking or conducting a response activity, including enforcement costs."
Applying these definitions to the facts of this case, it is apparent that under the plain language of the statute, the initiation of construction of the on-site treatment facility in 1991 constituted "on-site construction activities" in preparation for *333 the "treatment" and the "taking of other actions that may be necessary to prevent, minimize, or mitigate injury to the public health, safety, or welfare, or the environment." Thus, the on-site construction constitutes remedial action within the meaning of the NREPA. Federated asserts that the on-site construction activities cannot be remedial action and that the period of limitations therefore remained tolled, because the MDNR had not approved a final remedial action plan. This argument relies on a misinterpretation of the statute. Nothing in the statute provides that activities must first be approved by MDNR in a work plan in order to be characterized as remedial action, as that term is defined in the NREPA. Rather, the statute makes a clear distinction between remedial action and a remedial action plan. Because Schultz began remedial action activities in 1991, consistent with the work plan submitted to and approved by MDNR in 1993, Federated's complaint is barred by the statute of limitations. Federated also asserts that there is a question regarding whether on-site construction activities began in 1991 or in 1997. We disagree. The documentary evidence submitted in support of this contention only established that on-site construction activities were not completed in 1997. The overwhelming weight of the evidence established that construction activities began in 1991, as asserted by the road commission.
Federated's next contention, that this Court should apply a discovery rule to the statute of limitations and conclude that the period of limitations was tolled until 1995, is also misplaced. We first note that nothing in the language of § 20140(1)(a) evidences any intent to toll the running of the applicable period of limitations pending the potential future discovery of additional releases of contaminants from other sources. Second, § 20140(1)(c) expressly provides that the limitations period for bringing an action for civil fines under the NREPA is three years after the discovery of the violation for which civil fines may be assessed. The Legislature's clear imposition of a discovery rule in actions brought under § 20140(1)(c) in the face of the Legislature's failure to clearly impose a discovery rule in actions brought under § 20140(1)(a) is strong evidence that the Legislature did not intend the application of a discovery rule under the circumstances in this case. People v. Hock Shop, Inc., 261 Mich.App. 521, 523-524, 530, 681 N.W.2d 669 (2004), citing People v. Wilcox, 83 Mich.App. 654, 269 N.W.2d 256 (1978).

IV
For the reasons articulated herein, the trial court properly granted summary disposition in favor of the road commission.
Affirmed.