**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JUNE 21, 2006

FEDERATED INSURANCE COMPANY
and CARL M. SCHULTZ, INC.,

    Plaintiffs-Appellees,

v                                                            No. 126886

OAKLAND COUNTY ROAD COMMISSION,

    Defendant-Appellee.

and

ATTORNEY GENERAL,

    Intervenor-Appellant.
_____

BEFORE THE ENTIRE BENCH

TAYLOR, C.J.

At issue in this case is whether the Attorney General can appeal as an intervenor in this Court on behalf of the people and a state agency when the named losing parties did not themselves seek review in this Court. Notwithstanding the Attorney General's broad statutory authority to intervene in cases, we hold that to pursue such an appeal as an intervenor there must be a justiciable controversy,

which in this case requires an appeal by an "aggrieved party." Because neither of the losing parties below filed a timely appeal, and because the Attorney General does not represent an aggrieved party for purposes of this case, there is no longer a justiciable controversy. Under such circumstances, the Attorney General may not independently appeal the Court of Appeals judgment. We therefore dismiss this appeal.

## I. Facts and Procedural History

In 1988, Carl M. Schultz, Inc. (hereafter plaintiff), discovered that an underground storage tank and piping system located on its property had released petroleum into the soil. The Department of Natural Resources (DNR) directed plaintiff to take action to remedy this situation, and, in 1991, plaintiff began constructing an on-site treatment system. In 1992, the treatment system began operation, and, in 1993, the DNR approved plaintiff's site investigation work plan.

In 1991, defendant Oakland County Road Commission released petroleum on property adjacent to plaintiff's property. In 1992, plaintiff began to suspect that some of this petroleum had migrated onto its property. By 1995, the DNR concluded that at least some of the petroleum detected on plaintiff's property had originated from defendant's property. In 2000, plaintiff and its insurer, Federated Insurance Company, filed a cost-recovery action against defendant pursuant to provisions of the Natural Resources and Environmental Protection Act (NREPA),

2

MCL 324.20101 *et seq.,* for the added costs associated with the cleanup of petroleum contaminants that had originated from defendant's property.

The trial court granted defendant's motion for summary disposition, concluding that the action was barred by the six-year limitations period found in the NREPA, and the Court of Appeals affirmed. 263 Mich App 62; 687 NW2d 329 (2004). On behalf of the people of the state and the Michigan Department of Environmental Quality (MDEQ) (the successor to the DNR), which had never been a party in the trial court proceedings or in the appeal in the Court of Appeals, the Attorney General then filed a timely application for leave to appeal in this Court as an intervening appellant. Plaintiffs, however, did not file a timely application for leave to appeal even though they "lost" under the Court of Appeals opinion. This Court granted the Attorney General's application for leave to appeal and denied plaintiffs' cross-application for leave to appeal. 472 Mich 898 (2005).[1]

---

[1] Plaintiffs filed an application for leave to appeal in this Court after the deadline for filing an application for leave to appeal had expired. Plaintiffs sought to avoid MCR 7.302(C)(3) ("[l]ate applications will not be accepted") by designating the appeal as a cross-application for leave to appeal. Plaintiffs' "cross-application" fully supported the Attorney General-intervening appellant's application for leave to appeal. But, plaintiffs cannot be considered cross-appellants where their position is the same as that taken by the Attorney General-intervening appellant. Therefore, although plaintiffs referred to their application for leave to appeal as a cross-application, it was actually an untimely application for leave to appeal. This is why we denied plaintiffs' application.

## II. Standard of Review

Defendant argues that the Attorney General lacks the authority to intervene to appeal the judgment of the Court of Appeals. Because this issue implicates the constitutional authority of the judiciary and the Attorney General, we review it de novo. *Co Rd Ass'n of Michigan v Governor*, 474 Mich 11, 14; 705 NW2d 680 (2005).

## III. Analysis

Following adjudication in the Court of Appeals that resulted in a published opinion, where the parties were plaintiffs Federated Insurance Company and Carl M. Schultz, Inc., and defendant Oakland County Road Commission, the Attorney General, representing the people of the state and the MDEQ, has now sought to appeal in this Court, even though neither of the losing parties in the Court of Appeals sought timely leave to appeal. The Attorney General argues that the Court of Appeals misconstrued MCL 324.20140(1)(a), a statute that the MDEQ frequently litigates. Resolution of whether this intervention and appeal are permissible implicates standing, the "aggrieved party" concept, and what constitutes a justiciable controversy.

As we indicated in *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608, 612; 684 NW2d 800 (2004), citing *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726, 734; 629 NW2d 900 (2001), standing refers to the right

4

of a party plaintiff *initially* to invoke the power of the court to adjudicate a claimed injury in fact. In such a situation it is usually the case that the defendant, by contrast, has no injury in fact but is compelled to become a party by the plaintiff's filing of a lawsuit. In appeals, however, a similar interest is vindicated by the requirement that the party seeking appellate relief be an "aggrieved party" under MCR 7.203(A) and our case law.[2] This Court has previously stated, "To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency." In re *Estate of Trankla*, 321 Mich 478, 482; 32 NW2d 715 (1948), citing In re *Estate of Matt Miller*, 274 Mich 190, 194; 264 NW 338 (1936).[3] An

---

[2] See, e.g.*, Ford Motor Co v Jackson (On Rehearing)*, 399 Mich 213, 225; 249 NW2d 29 (1976) (Coleman, J.), citing *In re Critchell Estate*, 361 Mich 432; 105 NW2d 417 (1960). "'A party who could not benefit from a change in the judgment has no appealable interest.'" "'[O]f course one may not appeal from a judgment, order or decree, in his favor by which he is not injuriously affected.'" *Id*. at 226, quoting 4 Am Jur 2d, Appeal and Error, §§ 182, 184. See also *In re Estate of Trankla*, 321 Mich 478, 482; 32 NW2d 715 (1948) ("'It is a cardinal principle, which applies alike to every person desiring to appeal, that he must have an interest in the subject-matter of the litigation. Otherwise, he can have no standing to appeal.'") (citation omitted).

[3] The Attorney General does not fit within this definition of an "aggrieved party." Thus, contrary to the dissent's claim, our holding is not "unprecedented." The dissent further asserts that we are legislating from the bench a new restriction on the Attorney General's authority to intervene. Nothing could be further from the truth. Our holding is fully supported by constitutional principles and prior case law.

aggrieved party is not one who is merely disappointed over a certain result.[4]

Rather, to have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power. The only difference is a litigant on appeal must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underlying facts of the case.[5]

With regard to the necessity of a justiciable controversy, it derives from the constitutional requirement that the judiciary is to exercise the "judicial power" and only the "judicial power."

In giving meaning to what the "judicial power" is in our Constitution, we explained in *Nat'l Wildlife Federation, supra* at 614-615:

> The "judicial power" has traditionally been defined by a combination of considerations: the existence of a real dispute, or case or controversy; the avoidance of deciding hypothetical questions; the plaintiff who has suffered real harm; the existence of genuinely adverse parties; the sufficient ripeness or maturity of a

---

[4] The dissent contends that the Attorney General has standing because the MDEQ, the state agency that the Attorney General is representing, is "interested in the proper enforcement of the NREPA . . . ." *Post* at 12. However, if an interest in the proper enforcement of a statute were enough to confer standing, the Attorney General would always have standing because the people of Michigan and state agencies are always interested in the proper enforcement of statutes. Contrary to the dissent's contention, an interest in the proper enforcement of a statute has never before been thought sufficient to confer standing; instead, a concrete and particularized injury is required to confer standing.

[5] *Tachiona v United States*, 386 F3d 205, 210-211 (CA 2, 2004). See also *Kootenai Tribe of Idaho v Veneman*, 313 F3d 1094, 1109 (CA 9, 2002).

6

case; the eschewing of cases that are moot at any stage of their litigation; the ability to issue proper forms of effective relief to a party; the avoidance of political questions or other non-justiciable controversies; the avoidance of unnecessary constitutional issues; and the emphasis upon proscriptive as opposed to prescriptive decision making.

Perhaps the most critical element of the "judicial power" has been its requirement of a genuine case or controversy between the parties, one in which there is a real, not a hypothetical, dispute, and one in which the plaintiff has suffered a "particularized" or personal injury. [Citation omitted.][6]

The Attorney General's authority to intervene is found in two statutes.

MCL 14.101 states:

The Attorney General of the State is hereby authorized and empowered to intervene in any action heretofore or hereafter commenced in any court of the State whenever such intervention is necessary in order to protect any right or interest of the State, or of the people of the State. Such right of intervention shall exist at any stage of the proceeding, and the Attorney General shall have the same right to prosecute an appeal, or to apply for a re-hearing or to

---

[6] The dissent once again also accuses us of "further expand[ing] [our] judicial power." *Post* at 18 n 18. However, as this Court in *Nat'l Wildlife, supra* at 617-618, said:

[T]he exact opposite is true. By its adherence to *Lee*, the majority opinion rejects a constitutional regime in which the judicial branch can be invested with extra-constitutional powers at the expense of the other branches, in particular the executive. One need only be a casual student of government to recognize the extraordinary rarity of an institution of government, such as this Court, choosing, on the basis of constitutional objection, *not* to exercise a power conferred upon it by another branch of government. It is impenetrable reasoning to equate such an *abnegation* of power with an *enhancement* of power. [Emphasis in original.]

7

take any other action or step whatsoever that is had or possessed by any of the parties to such litigation.

Similarly, MCL 14.28 states:

The Attorney General shall prosecute and defend all actions in the supreme court, in which the state shall be interested, or a party; he may, in his discretion, designate one of the assistant attorneys general to be known as the solicitor general, who, under his direction, shall have charge of such causes in the supreme court and shall perform such other duties as may be assigned to him; and the attorney general shall also, when requested by the governor, or either branch of the legislature, and may, when in his own judgment the interests of the state require it, intervene in and appear for the people of this state in any other court or tribunal, in any cause or matter, civil or criminal, in which the people of this state may be a party or interested.

These statutes purport to provide the Attorney General with the authority to prosecute, defend, and intervene in certain "actions." But, this case ceased to be an "action" when the losing parties below (plaintiffs) failed to file a timely application for leave to appeal in this Court. Once plaintiffs' deadline for filing a timely application for leave to appeal expired, the case ceased to be a justiciable controversy.[7] To the extent one might read MCL 14.101 or MCL 14.28 as

---

[7] If plaintiffs had filed a timely application for leave to appeal, there would obviously have been a justiciable controversy in which the Attorney General could have intervened. Consistent with the principles of appellate standing, where the Attorney General intervenes solely to advocate a general position on the law, the intervention statutes on which the Attorney General relies confer on the Attorney General only a form of "statutory amicus," not true party, status. Thus, if the Attorney General had sought to intervene in a timely filed appeal by a party with appellate standing—not to represent a client that had suffered an adverse decision of a lower court but only to advance a perspective on the law—the Attorney

(continued…)

8

allowing the Attorney General to prosecute an appeal from a lower court ruling without the losing party below also appealing, and without the Attorney General himself being or representing an aggrieved party, the statutes would exceed the Legislature's authority because, except where expressly provided,[8] this Court is not constitutionally authorized to hear nonjusticiable controversies.[9] *Nat'l Wildlife Federation, supra* at 614-615. To give these statutes such a reading would contravene an operative presumption of this Court that we presume constitutional intent on the part of the Legislature. See *Phillips v Mirac, Inc*, 470 Mich 415, 422; 685 NW2d 174 (2004).

## IV. Response to the Dissent

The dissent relies on two cases in arguing that the Attorney General should be allowed to appeal in this Court notwithstanding the fact that the losing parties below did not file a timely appeal: *Mundy v McDonald*, 216 Mich 444; 185 NW

(…continued)

General's role would have been limited to advocating the state's position on the law. Whatever role the Attorney General may properly play in an appeal in which he intervenes, the precondition for intervention is that there must be a timely appeal by a party that has appellate standing as outlined in this opinion.

[8] See, e.g., Const 1963, art 3, § 8, which permits the legislative and executive branches of government to request an opinion of this Court on the constitutionality of legislation not yet in effect.

[9] Although the MDEQ might well have an interest in how MCL 324.20140(1)(a) is interpreted, it has not yet suffered a concrete injury on the basis of the alleged misconstruction of the statute. Moreover, no reason exists to

(continued…)

9

877 (1921), and *Russell v Peoples Wayne Co Bank of Dearborn*, 275 Mich 415; 266 NW 401 (1936). These cases, however, are not inconsistent with our holding today; nor do they support the holding the dissent would adopt.

In *Mundy*, a circuit judge was sued in circuit court for libel. The Attorney General's office, on behalf of the circuit judge, sought dismissal of the lawsuit. On appeal, this Court rejected the argument that the Attorney General's office could not defend a circuit judge who had been sued. The Attorney General's office represented an actual defendant party in that lawsuit.

In *Russell*, a receiver of the Detroit Banker's Company filed a lawsuit seeking to have liquidating receivers appointed for other banks. The Attorney General's office intervened in the case and moved to dismiss the lawsuit. On appeal, the plaintiff argued that the Attorney General should not have been permitted to move to dismiss the case because the public had no interest in the litigation. This Court rejected the plaintiff's claim because the banking commissioner became a "party" when the plaintiff sought to have receivers appointed. Again, the Attorney General's office represented an actual party in the litigation.

---

(…continued)
prevent the Attorney General from filing a lawsuit on behalf of the MDEQ once the MDEQ has suffered such an injury, e.g., is denied reimbursement costs.

10

Each of these cases is inapposite because it presented a justiciable controversy wherein the Attorney General represented an actual party. In the case at bar, however, no justiciable controversy exists and the Attorney General does not represent a party to the dispute. Moreover, none of these cases cited by the dissent involved the Attorney General attempting to appeal a decision of a lower court without the losing party below also appealing.

Our opinion does not overrule any cases. Under our holding, the Attorney General remains free to prosecute actions on behalf of the state and may appear on behalf of state parties.[10] Moreover, it is not inconsistent with the Attorney General's authority to intervene in "actions." As previously explained, we merely hold that the Attorney General's authority to intervene does not include the ability to appeal a nonjusticiable case. Given the untethered language in the dissent, one has to wonder if there is any circumstance in which the dissent would conclude that the Attorney General would not have the authority to intervene and pursue an appeal no matter how unrelated the Attorney General's "interest" may be to traditional standing considerations.

---

[10] Indeed, contrary to the dissent's contention, we are not holding that the Attorney General cannot appeal to this Court unless the named losing party also appeals; rather, we are holding that the Attorney General cannot appeal unless some aggrieved party appeals. There may be instances where the Attorney General himself or a party he is representing is aggrieved. This, however, is not such a case.

11

Contrary to the dissent's contention, the issue of the Attorney General's authority to independently intervene and appeal the Court of Appeals opinion was raised by the defendant in its brief on appeal; it was argued at oral argument, and it was briefed by the Attorney General and defendant in supplemental briefs. Finally, contrary to the dissent's contention, we are not expanding the standing theory; rather, our holding is consistent with our prior case law as cited in n 2 of this opinion.

## V. Conclusion

We conclude that there is no justiciable controversy because the Attorney General does not represent an aggrieved party and because neither of the losing parties below chose to file a timely application for leave to appeal. Under such circumstances, this Court does not have the authority to hear the Attorney General's appeal. Therefore, we dismiss the appeal.

> Clifford W. Taylor
> Maura D. Corrigan
> Robert P. Young
> Stephen J. Markman

12

S T A T E   O F   M I C H I G A N

SUPREME COURT

FEDERATED INSURANCE COMPANY,

      Plaintiff-Appellees,

V                                                                          No. 126886

OAKLAND COUNTY ROAD
COMMISSION,

        Defendant-Appellee,
and

ATTORNEY GENERAL,

        Intervenor-Appellant.

_____

WEAVER, J. (*dissenting*).

      I dissent from the majority's holding that the Attorney General may not intervene in this case involving cost recovery for environmental contamination caused by defendant, Oakland County Road Commission. The majority's holding imposes unprecedented and unsupportable limitations on the Attorney General's ability to defend the interests of the people of the state of Michigan and to defend the interests of the Michigan Department of Environmental Quality (MDEQ) in the enforcement of Michigan law.

I also dissent from the majority's unprecedented narrowing of who is an "aggrieved party" for the purpose of invoking the appellate jurisdiction of this Court.  The question of what constitutes an "aggrieved party" was not raised or briefed by the parties.  Yet by reference to inapplicable federal law, the majority redefines who is an "aggrieved party," stating:

> [T]o have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power.  The only difference is a litigant on appeal must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underly facts of the case. [*Ante* at 6.]

With this holding, the majority expands its novel standing theory adopted in *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co,* 471 Mich 608; 684 NW2d 800 (2004), by applying it to parties seeking to invoke this Court's appellate jurisdiction.

In this case on July 13, 2004, the Court of Appeals held that plaintiff's cost-recovery action against defendant was barred by MCL 324.20140(1), the statute of limitations of the Natural Resources and Environmental Protection Act (NREPA).[1] After the Court of Appeals rendered its decision, the Attorney General filed his motion to intervene on behalf of the people of Michigan and the MDEQ.  Within

---

[1] *Federated Ins Co v Oakland Co Rd Comm,* 263 Mich App 62; 687 NW2d 329 (2004).

2

the period specified for appeals,[2] the Attorney General appealed the decision of the Court of Appeals in this Court.

In response to the Attorney General's application, defendant Oakland County Road Commission challenges the Attorney General's standing to intervene in the case.[3] This Court granted the Attorney General's application, directing the parties to include among the issues to be briefed:

> (1) whether the work initiated in 1991 was an "interim response activity" that did not trigger the statute of limitations provision set out in MCL 324.20140(1)(a) rather than a remedial action at that must first be approved or selected at by the Department of Environmental Quality; and (2) whether the initiation of work for one release of hazardous substances begins the running of the statute of limitations for any subsequent or unrelated release of hazardous substances. [472 Mich 898 (2005).]

No reference was made in this Court's grant order regarding whether the Attorney General represents an "aggrieved party."

I would hold that once the Attorney General intervened, he possessed the same right to appeal the decision of the Court of Appeals that was had or possessed by any party.[4] At the time the Attorney General appealed, plaintiff, Federated, still possessed the right to appeal from the decision of the Court of Appeals. Contrary to the conclusion of the majority, it is irrelevant to the

---

[2] MCR 7.302(C).

[3] Federated Insurance Company filed an untimely cross-application for leave to appeal, which this Court denied. 472 Mich 898 (2005).

3

authority of the Attorney General to maintain this appeal on behalf of the people and the MDEQ that Federated did not also perfect an appeal in a timely manner.

I would hold that upon his proper intervention and timely appeal, the Attorney General had the authority to represent the people of Michigan and the MDEQ because both parties are "aggrieved parties" within the traditional understanding of the term. With its decision today, however, the majority not only imposes unprecedented limits on the authority of the Attorney General to perform his statutory obligations, it also redefines and narrows who will be deemed an "aggrieved party" for the purposes of invoking appellate court jurisdiction.

For the reasons below, I would reverse the decision of the Court of Appeals because the Attorney General has the authority to represent the people of Michigan and the MDEQ in this appeal. Further, I would hold that the cost-recovery action was not barred by MCL 324.20140(1).

I

The law enacted by the Legislature is very clear regarding the power of the Attorney General to litigate on behalf of the interests of the people of Michigan. Pursuant to MCL 14.28, the Attorney General may,

> when in his own judgment the interests of the state require it, intervene in and appear for the people of this state in any other court

(…continued)

[4] MCL 14.101.

4

or tribunal, in any cause or matter, civil or criminal, in which the people of this state may be a party or interested.[5]

MCL 14.101 provides that the Attorney General's power to intervene exists

at any stage of the proceeding, and the Attorney General shall have the same right to prosecute an appeal, or to apply for a re-hearing or to take any other action or step whatsoever that is had or possessed by any of the parties to such litigation.[6]

This Court, including the members of this majority, has broadly construed the

authority of the Attorney General to litigate on behalf of the people of the state. *In*

---

[5] MCL 14.28 states in full:

The attorney general shall prosecute and defend all actions in the supreme court, in which the state shall be interested, or a party; he may, in his discretion, designate one of the assistant attorneys general to be known as the solicitor general, who, under his direction, shall have charge of such causes in the supreme court and shall perform such other duties as may be assigned to him; and the attorney general shall also, when requested by the governor, or either branch of the legislature, and may, when in his own judgment the interests of the state require it, intervene in and appear for the people of this state in any other court or tribunal, in any cause or matter, civil or criminal, in which the people of this state may be a party or interested.

[6] MCL 14.101 states in full:

The Attorney General of the State is hereby authorized and empowered to intervene in any action heretofore or hereafter commenced in any court of the State whenever such intervention is necessary in order to protect any right or interest of the State, or of the people of the State. Such right of intervention shall exist at any stage of the proceeding, and the Attorney General shall have the same right to prosecute an appeal, or to apply for a rehearing or to take any other action or step whatsoever that is had or possessed by any of the parties to such litigation.

5

*re Certified Quesiton (Wayne Co v Phillip Morris, Inc)*, 465 Mich 537, 543-545; 638 NW2d 409 (2002); *Mundy v McDonald*, 216 Mich 444, 450-451; 185 NW 877 (1921). This Court, including this majority, has stated that "courts should accord substantial deference to the Attorney General's decision that a matter constitutes a state interest." *In re Certified Question, supra* at 547.

Until this majority's decision today, the only limitations on the Attorney General's power to intervene have been that the intervention must advance a state, rather than a merely local, interest,[7] and the Attorney General's intervention must not be "clearly inimical to the public interest . . . ."[8] But now this majority ignores its own precedent and the express statutory authority provided by MCL 14.101 that permits the Attorney General to intervene on behalf of a state interest at any time. The majority legislates from the bench a new restriction on the Attorney General's authority to intervene by premising it on a losing party's decision to pursue or not pursue an appeal.

The majority declares that without a losing party, there is no justiciable controversy. But as this Court stated in *Mundy, supra* at 451, "It is too narrow a view of the case to say that the people of this State are not interested in the defense in a case of this nature, which involves the purely legal question . . . ." *Mundy, supra,* involved an action for libel against a circuit judge. The Attorney General

---

[7] *Attorney General ex rel Lockwood v Moliter*, 26 Mich 444, 447 (1873).

intervened and filed a motion to dismiss the case on the grounds that the judge was acting in his official capacity when the allegedly libelous statement was made. The party alleging libel against the judge challenged the Attorney General's authority to intervene to address a purely legal question. This Court in *Mundy, supra* at 451, affirmed the authority of the Attorney General to intervene and stated:

> Certainly if the people of the State can be said to be interested in a criminal proceeding, they are, we think, equally interested in this action growing out of it, depending as it does entirely upon whether the acts of the defendant complained of were judicial acts.

In this case, the legal issue involves the proper interpretation of a statute of limitations within the NREPA. The resolution of this question affects the proper allocation of costs for response activities for environmental contamination. The Legislature has very clearly provided that a person who causes environmental contamination should pay for its cleanup. MCL 324.20102(f) provides that "liability for response activities to address environmental contamination should be imposed upon those persons who are responsible for the environmental contamination." The logic of *Mundy* is decisive in this case: Because the people of Michigan through their Legislature have expressed an interest in the proper allocation of response activity costs for environmental cleanup, it is "too narrow a view" to conclude that the people would not also be interested in the proper

---

(…continued)

[8] *People v Johnston*, 326 Mich 213, 217; 40 NW2d 124 (1949).

interpretation of a statute that affects the allocation of those costs. The majority's attempt to distinguish *Mundy* on the ground that the Attorney General represented an "actual party" in that case is unpersuasive. The majority fails to grasp that the people of Michigan became an "actual party" once the Attorney General intervened in a timely manner on their behalf.

I would conclude that the Attorney General may intervene on behalf of the people of Michigan to seek a proper interpretation of state law.

II

In addition to having the authority to intervene on behalf of the people of Michigan, the Attorney General has the authority to intervene in this matter on behalf of the MDEQ. The MDEQ is a department of the executive branch. MCL 14.29 provides that "[i]t shall be the duty of the attorney general, at the request of the governor . . . to prosecute and defend all suits relating to matters connected with [the Governor's] departments."

This Court, including the members of this majority, has specifically recognized that the Attorney General's authority to litigate in matters of state interest necessarily includes the authority to litigate "on behalf of the state's political subdivisions in matters of state interest." *In re Certified Question, supra* at 545, citing *Michigan ex rel Kelley v CR Equip Sales, Inc,* 898 F Supp 509, 514 (WD Mich, 1995). Further, the NREPA expressly provides that the Attorney General may commence a civil action "on behalf of the state" seeking relief,

8

including "[a]ny other relief necessary for the enforcement of this part." MCL 324.20137(1)(k).[9] The majority's opinion, however, fails to recognize or analyze the interest of the MDEQ in this case.

_____

[9] MCL 324.20137(1) provides in full:

In addition to other relief authorized by law, the attorney general may, on behalf of the state, commence a civil action seeking 1 or more of the following:

(a) Temporary or permanent injunctive relief necessary to protect the public health, safety, or welfare, or the environment from the release or threat of release.

(b) Recovery of state response activity costs pursuant to section 20126a.

(c) Damages for the full value of injury to, destruction of, or loss of natural resources resulting from the release or threat of release, including the reasonable costs of assessing the injury, destruction, or loss resulting from the release or threat of release.

(d) A declaratory judgment on liability for future response costs and damages.

(e) A civil fine of not more than $1,000.00 for each day of noncompliance without sufficient cause with a written request of the department pursuant to section 20114(1)(h). A fine imposed under this subdivision shall be based on the seriousness of the violation and any good faith efforts of the person to comply with the request of the department.

(f) A civil fine of not more than $10,000.00 for each day of violation of this part or a rule promulgated under this part. A fine imposed under this subdivision shall be based upon the seriousness of the violation and any good faith efforts of the person to comply with this part or a rule promulgated under this part.

(g) A civil fine of not more than $25,000.00 for each day of violation of a judicial order or an administrative order issued

(continued…)

9

The MDEQ has a tangible interest in the resolution of this case. In 1995, the MDEQ notified defendant, Oakland County Road Commission, that the department had identified and confirmed a release of "free product"[10] from an underground storage tank on defendant's property that had migrated to plaintiff's property. The MDEQ's letter refers to plaintiff's property as the CMS "facility."[11] The MDEQ letter states that the treatment system constructed to remediate the plaintiff's 1988 separate release of hazardous substances at the CMS facility had been activated in August 1992. The system had removed hazardous substances associated with the plaintiff's release at the CMS facility through approximately

(…continued)

       pursuant to section 20119, including exemplary damages pursuant to section 20119.

       (h) Enforcement of an administrative order issued pursuant to section 20119.

       (i) Enforcement of information gathering and entry authority pursuant to section 20117.

       (j) Enforcement of the reporting requirements under section 20114(1), (3), and (6).

       (k) Any other relief necessary for the enforcement of this part.

[10] "'Free product' means a hazardous substance in a liquid phase equal to or greater than 1/8 inch of measurable thickness that is not dissolved in water and that has been released into the environment." MCL 324.20101(r).

[11] "'Facility' means any area, place, or property where a hazardous substance in excess of the concentrations which satisfy the requirements of section 20120a(1) or (17) or the cleanup criteria for unrestricted residential use under part
(continued…)

June 1993.  The letter indicates that from January 1994 through September 1994, no hazardous substances had been observed in the plaintiff's treatment system.

However, in November 1994, the letter states that the CMS treatment system encountered hazardous substances again.  After an investigation by the department staff, it was confirmed that the hazardous substances appearing in CMS's treatment system were different in kind from that which had been released by the plaintiff.  The investigation confirmed that the new hazardous substances that had appeared in plaintiff's treatment system derived from a separate release from defendant's facility.

The record does not suggest that the MDEQ's investigation of the separate release from defendant's facility is complete.  Indeed, the letter recommends that several actions be taken by defendant to address the hazardous substances, and that remedial action for the confirmed April 5, 1991, release at the defendant's facility be continued.  The letter recommends that remedial actions taken by the defendant be coordinated with those already occurring at the CMS facility.  The letter also provides that the letter "should not be construed as a sign-off on all site investigations or corrective actions that may be required at [defendant's] site."  In other words, the MDEQ has an interest in ongoing investigations and remediation of environmental contamination from defendant's facility.

_____

(…continued)
213 has been released, deposited, disposed of, or otherwise comes to be located."
(continued…)

11

The MDEQ's interest in this case derives from its enforcement responsibility under the NREPA.[12]   The NREPA provides that the owner or operator of a facility "is responsible for an activity causing a release" of hazardous substances into the environment.  MCL 324.20126(1)(a).  MCL 324.20126a(1) provides that a person who is liable for a release is jointly and severally liable for the following:

> (a) All costs of response activity lawfully incurred by the state relating to the selection and implementation of response activity . . . .
>
> (b) Any other necessary costs of response activity incurred by any other person consistent with rules relating to the selection and implementation of response activity promulgate under this part.
>
> (c) Damages for the full value of injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing the injury, destruction, or loss resulting from the release.

The letter from the MDEQ to defendant reveals that there was a confirmed release of hazardous substances into the environment at defendant's facility in April 1991, but that the release from defendant's facility did not appear in plaintiff's treatment system until November 1994.  Under the NREPA, defendant is jointly and severally liable for the costs associated with defendant's release.  MCL 324.20126a(1).  The MDEQ is and should be interested in the proper enforcement of the NREPA against defendant.

---

(…continued)
MCL 324.20101(o).

12

The Court of Appeals, however, concluded that this cost-recovery action against defendant was barred by the statute of limitations because more than six years had passed since plaintiff began construction of its treatment system in November 1991. The NREPA statute of limitations at issue provides that the period of limitations

> [f]or the recovery of response activity costs and natural resources damages pursuant to section 20126a(1)(a), (b), or (c), [is] within 6 years of initiation of physical on-site construction activities for the remedial action selected or approved by the department at a facility . . . . [MCL 324.20140(1)(a).]

Plaintiff initiated its cost-recovery action against defendant in November 2000, within six years from the date that it was confirmed that defendant's separate release had comingled with plaintiff's. The Attorney General, on behalf of the MDEQ, argues that the Court of Appeals conclusion that the period ran from November 1991, before plaintiff was even aware of defendant's separate release, was wrong. Therefore, the Attorney General intervened on behalf of the MDEQ and filed this timely application for leave to appeal.

The Attorney General has the authority to represent the MDEQ's interest in challenging the Court of Appeals interpretation of the NREPA statute of limitations. The MDEQ is conducting an ongoing investigation into the separate release of hazardous substances for which defendant is liable at defendant's

(…continued)

[12] MCL 324.20102(m).

13

separate facility. There is no evidence in the record that there has been any "initiation of physical on-site construction activities for the remedial action selected or approved by the department" at defendant's facility.[13] It is notable that plaintiff's treatment facility was constructed to remediate the contamination caused by plaintiff at plaintiff's separate facility. It defies common sense to commence the running of the period of limitations from the initiation of construction activities at plaintiff's facility, when those activities preceded any confirmation of and perhaps even any actual comingling of hazardous substances from defendant's separate release and facility.

The majority fails to analyze the independent interest of the MDEQ in this matter. Instead, it ignores it and suggests that the Attorney General's authority to intervene must be predicated on a losing party's decision to appeal. This reasoning ignores this Court's prior case law that recognized that the interest of a state department in the subject matter of a lawsuit justifies the Attorney General's participation in the suit on behalf of that department.

In *Russell v Peoples Wayne Co Bank of Dearborn,* 275 Mich 415; 266 NW 401 (1936), this Court held that the Attorney General could intervene on behalf of the state banking commissioner in a matter involving agreements for the liquidation of certain banks. The state banking commissioner had approved the

---

[13] MCL 324.20140(1)(a).

14

agreements, but when a dispute later arose between the parties, the Attorney General intervened on behalf of the banking commissioner. This Court rejected a challenge to the authority of the Attorney General to intervene, stating:

> [T]he suits at bar grew out of the mentioned agreements, approved by the banking commissioner, and assertion of right by the Reconstruction Finance Corporation as a creditor and, therefore, the State, through its banking commissioner, with power over banks and banking, had an interest in the subject-matter of the litigation.

> The liquidation by agreement was consented to by the banking commissioner and, inasmuch as liquidation of a State bank is under control of the banking commissioner, when plaintiff sought by the suit for the appointment of liquidating receivers rather than under the approved agreements, the banking commissioner was again a party in interest.

> The attorney general not only had a right to intervene but to move to dismiss the bills for want of jurisdiction in the court to appoint a receiver. [*Russell, supra* at 418-419.]

As in *Russell*, I would hold that the Attorney General has the authority to intervene and represent the interests of the MDEQ in this case. The majority's attempt to distinguish *Russell* on the ground that the Attorney General in that case represented an "actual party" again misses the mark, because in this case the MDEQ was an actual party once the Attorney General intervened.

The people, through the Legislature, have expressed in the NREPA a strong interest in appropriate response activities with respect to releases of hazardous substances[14] and in the proper allocation of liability[15] for such releases. With

---

[14] MCL 324.20102(c) provides:

(continued…)

15

respect to the allocation of response activity costs, MCL 324.20102(f) provides that "liability for response activities to address environmental contamination should be imposed upon those persons who are responsible for the environmental contamination." The statute further provides at MCL 324.20126a(7) that the "costs recoverable under this section may be recovered in an action brought by the state or any other person."

The MDEQ is charged with the enforcement of the NREPA.[16] The Attorney General, on behalf of the MDEQ, has standing to challenge the Court of Appeals interpretation of the six-year statute of limitations at issue in this case. The Court of Appeals holding that the limitations period commenced running when plaintiff began construction of a treatment system fails to recognize that plaintiff's construction began before plaintiff was even aware of the release at

---

(…continued)

> That it is the purpose of this part to provide for appropriate response activity to eliminate unacceptable risks to public health, safety, and welfare, or to the environment from environmental contamination at facilities within the state.

[15] MCL 324.20102(e) provides:

> That the responsibility for the cost of response activities pertaining to a release or threat of release and repairing injury, destruction, or loss to natural resources caused by a release or threat of release should not be placed upon the public except when funds cannot be collected from, or a response activity cannot be undertaken by, a person liable under this part.

[16] MCL 324.20102(m).

defendant's site and years before comingling of defendant's release with the plaintiff's was confirmed by the MDEQ. The Court of Appeals interpretation of the statute of limitations at issue undermines the MDEQ's ability to enforce the NREPA's cost-recovery provisions against defendant.

III

Even though the specific issue of who qualifies as an "aggrieved party" was not raised or briefed by the parties, the majority chooses this case to redefine and limit who is an "aggrieved party" for the purpose of invoking appellate court jurisdiction.[17] The majority uses this case to expand the erroneous standing theory that it adopted in *Nat'l Wildlife, supra*,[18] by applying it to parties appealing from a

---

[17] Even though the jurisdiction of the Court of Appeals is not at issue in this case, the majority seizes this opportunity to also redefine who qualifies as an "aggrieved party" under MCR 7.203(A), the court rule defining the jurisdiction of the Court of Appeals. At issue in this case, however, is this Court's jurisdiction over appeals. This Court's jurisdiction is governed by MCR 7.301(A). In relevant part, MCR 7.301(A)(2) simply provides that "[t]he Supreme Court may . . . review by appeal a case . . . after decision by the Court of Appeals." The applicable court rule thus provides no foundation for the majority's holding in this case.

[18] In *Nat'l Wildlife,* the same majority of four overruled 30 years of precedent when it held that the Legislature may not confer standing on "any person" under the Michigan environmental protection act (MEPA), MCL 324.1701 *et seq.* Under the majority's *Nat'l Wildlife* decision, citizen standing is controlled by a test the majority imported from federal law and that is premised on federal constitutional provisions that do not exist in Michigan. As I stated in *Nat'l Wildlife, supra* at 654:

> While pretending to limit its "judicial power," the majority's application of *Lee's* judicial standing test in this case actually expands the power of the judiciary at the expense of the Legislature
>
> (continued…)

17

trial court judgment. The majority requires that to have the right to appeal, a party

must be an "aggrieved party," and to be "aggrieved"

> a litigant must have suffered a concrete and particularized injury, as
> would a party plaintiff initially invoking the court's power. The
> only difference is a litigant on appeal must demonstrate an injury
> arising from either the actions of the trial court or the appellate court
> judgment rather than an injury arising from the underlying facts of
> the case. [*Ante* at 6.]

For this new test, the majority cites two inapplicable federal cases that address the

limitation on federal court jurisdiction imposed by the case or controversy

requirement of the federal constitution, art III, § 2. In *Nat'l Wildlife,* the same

majority superimposed the same inapplicable federal constitutional constraints on

the standing of Michigan citizens in state court actions. As I previously addressed

in *Nat'l Wildlife,* art III, § 2 constraints do not apply to state court jurisdiction.

See *Nat'l Wildlife, supra* at 660-661 (Weaver, J. concurring in result only.) This

is true at both the trial court and appellate court levels.

The majority's redefinition of "aggrieved party" to require a "concrete and

particularized injury" imposes a higher threshold than this Court's previous

articulations of "aggrieved party." This Court has previously held that to be an

---

(…continued)
> by undermining the Legislature's constitutional authority to enact
> laws that protect natural resources. [Weaver, J., concurring in result
> only.]

In this case, the majority further expands its judicial power, this time at the
expense of the power properly vested in the Attorney General as representative of
the executive branch and the people of Michigan.

18

"aggrieved party" simply requires that a party have some interest, "pecuniary or otherwise," in the subject matter of a case.  See *In re Critchell Estate,* 361 Mich 432, 450; 105 NW2d 417 (1960).  *In re Critchell* recognized that an interest may be something other than pecuniary, for example, in cases involving the adoption of a child.  *Id.* at 449, citing *In re Draime*, 356 Mich 368; 97 NW2d 115 (1959).  The majority's new test for invoking appellate jurisdiction unnecessarily heightens the burden of all parties who pursue an appeal.

The majority's decision severely erodes the authority of the Attorney General to defend state interests in this Court.  Without analysis, the majority concludes that neither the MDEQ nor the people of the state of Michigan are aggrieved by the decision of the Court of Appeals under the majority's new test.  The majority implies that the people of Michigan and the MDEQ's interests are "tangential" and declares that despite the Attorney General's timely and proper intervention on behalf of state interests in this case, the Attorney General cannot appeal to this Court unless a losing party also files a timely appeal.  The majority states:

> To the extent one might read MCL 14.101 or MCL 14.28 as allowing the Attorney General to prosecute an appeal from a lower court ruling without the losing party below also appealing, and without the Attorney General himself being or representing an aggrieved party, the statutes would exceed the Legislature's authority because, except where expressly provided, this Court is not constitutionally authorized to hear nonjusticiable controversies. [*Ante* at 8-9.]

19

As explained in the preceding parts of this dissent, in the context of this case, the people of Michigan and the MDEQ have clear and defined interests in the outcome of this appeal. The interests of the people of Michigan and the MDEQ in this case are sufficient under Michigan's prior case law to make them "aggrieved parties." As discussed above, both the people of Michigan and the MDEQ have some interest, pecuniary or otherwise, in the outcome of this case. See, e.g., *In re Critchell*, supra at 450. Further, the Attorney General intervened in a timely manner to represent those interests and has the statutory authority to "prosecute and defend all actions in the supreme court, in which the state shall be interested. . . ." MCL 14.28.

Yet, the majority fails to analyze or address the state's interests in this case. Instead, the majority opines that there is no "justiciable controversy" before this Court because Federated did not appeal properly. *Ante* at 8. In so holding, the majority overrules without any explanation Michigan's longstanding precedent that recognized the Attorney General's broad authority to intervene, prosecute, and defend matters of state interest in the Supreme Court.[19]

---

[19] See, e.g., *In re Certified Quesiton, supra*; *People v Johnston, supra*; *Mundy, supra; Attorney General ex rel Lockwood, supra; Russell, supra*.

20

## IV

In order to represent the interests of the people of Michigan or the MDEQ in this litigation, the majority effectively requires the Attorney General to convince another party, over whom the Attorney General has no control and who the Attorney General does not represent, to pursue an appeal. There are many reasons that a party might not pursue an appeal, and it is wrong to hinge the defense of the interests of the people of Michigan and those of the MDEQ on the decisions or strategies of another party. Moreover, it is wrong for the majority to use this case to limit who is an "aggrieved party" for the purpose of invoking appellate court jurisdiction, especially since the definition of "aggrieved party" was neither raised nor briefed by the parties.

For these reasons, I dissent and would hold that the Attorney General has the authority, on behalf of the people of Michigan and on behalf of the MDEQ, to pursue this appeal.

Elizabeth A. Weaver
Michael F. Cavanagh
Marilyn Kelly

21