The Attorney General on the relation of James K. Lockwood. v. Albert Moliter and others.

*Bill in equity: Attorney general: County funds.* The attorney general cannot sue in equity to compel the recipients of money illegally paid out of the county treasury to refund, or the official agents incriminated to reimburse the county; such a right of action is not a matter of state concern, but is a mere money demand belonging to the county, for which the ordinary remedy by a common-law action is suitable and ample.

*Jurisdiction: Waiver.* This objection being one of jurisdiction, is not susceptible of being waived by an omission to insist upon it.

*Attorney general: Pleading and practice: Relator.* Where the attorney general has a right to intervene to restrain unauthorized corporate action, the regular course is for him to proceed by information rather than by bill in equity; and though a relator be named to supply some one to be subject to costs, still the suit is exclusively that of the official agent, and must be prosecuted by his sanction, and be guided and controlled by his judgment.

*Practice in supreme court.* In this case, the court holding that they have no jurisdiction to entertain the complainant's appeal, to grant the special relief sought, dismiss the appeal, with costs, without affirming the decree below, which was in his favor.

*Heard January 7. Decided April 9.*

Appeal in Chancery from Alpena Circuit.

*Marston & Hatch,* for complainant, and relator.

*McDonell & Cobb,* for defendants.

GRAVES, J.

The relator, a resident and tax-payer of the county of Alpena, filed this bill in the name of the attorney general, on the 29th of April, 1872.

The defendants Moliter, Richardson, and Robinson, composed the board of supervisors of that county from April 1st, 1870, to April 1st, 1871, and for the year from April 1st, 1871, to April 1st, 1872, the board consisted of the defendants, Potter, McDonald, McTavish, Robinson, Breckenreid, and Moliter, except that the latter ceased to be a member on the 15th of September, 1871.

The defendant Cavanaugh was sheriff, the defendant Hopper treasurer, the defendant Carpenter clerk, and the defendant McDonald register of deeds, of the county, for the regular terms which commenced on the 1st of January, 1871.

The bill charges, in substance, that on 9th of January, 1871, the board adopted a resolution giving large annual salaries to the sheriff, treasurer, and clerk, then in office, for their current terms, and authorized the payment of one-half of each of such annual salaries in advance; that the annual salary so allowed the sheriff, Mr. Cavanaugh, was one thousand dollars; that in January, 1872, the board ordered that his salary so allowed, should be paid quarterly, on the first days of April, July, October and January; that the first year's salary of one thousand dollars has been paid to him out of the treasury, pursuant to the resolution, and that full payment of the whole allowance fixed by the resolution is contemplated and threatened; that said resolution and allowance were unauthorized and void, and that the sheriff and all the other defendants were aware at the time of the adoption of the resolution of January 9th, and since hitherto have been and still are aware of the illegality of the proceedings.

The complainant asks that further payments may be restrained, and also that the money paid to the sheriff under the resolution shall be repaid to the county.

Answers were put in which, among other matters, denied the right of the attorney general, upon the case stated, to sue in equity. On the hearing in the court below, which was upon pleadings and proofs, it appeared that during the pendency of the suit, payments had been made and orders issued on account of the sheriff's salary, and the court decreed that such moneys should be repaid, and such orders surrendered and cancelled. The decree also enjoined all

further action towards payment of the sheriff's salary, but did not order repayment to the county, of the salary paid before the suit was instituted.

The relator has appealed, and now insists that the decree did not accord the full measure of relief required by the case. He makes no complaint against the scheme of the decree as far as it extends, but he urges that further relief ought to have been given, and that repayment to the county should have been required, of the money paid upon the salary before the suit was commenced.

As the defendants have not appealed, they must be taken to have acquiesced, and they do not now insist upon the objection, that the specific relief sought by the appeal, is unobtainable by bill brought by the attorney general. It seems to have been supposed by them that this point was ruled in *The Attorney General v. City of Detroit, supra, p. 263.* But this is a mistake. That case was based upon what may be called the preventive jurisdiction of the court, and was instituted to keep public officers from proceeding, as was claimed illegally, in reference to a fund applicable to a particular public object, and was not framed to compel repayment of funds illegally paid out. Although some views were advanced as to the right of the attorney general to sue in that case, the members of the court were not quite agreed upon it, and the decree below was finally affirmed upon the ground, that if his right to sue were admitted, the facts were not such as to raise an equity. That case is, therefore, no authority for the proposition, that the attorney general may sue in equity, to compel the recipients of money illegally paid out of the county treasury, to refund, or the official agents incriminated, to reimburse the county. And I confess that I have not been able to discover, in existing regulations in this state, any authority for such a proceeding.

The purpose is not to confine public officers within their authority, to guard or direct a charity, to preserve the integrity of a juridical trust of which the state has immediate care, or to promote, or protect any determinate state right or interest.

But the claim is essentially a mere money demand, belonging to the county. It is strictly of the class cognizable in the common-law action of money had and received, and from its nature, is susceptible of prosecution in that form, by the county. The bill before us in the name of the attorney general, is attempted to be used to work out for the county, precisely the end of such an action. The title to the claim, both legal and equitable, is exclusively in the county. If collected, the money must be instantaneously paid into the county treasury, and no state agency or official can touch or control it. If still treasurer, the defendant Hopper must immediately have charge of it. The law having ordained the custody, the court could not institute one, and it is not unworthy of notice in passing, that for all that appears, Hopper is still treasurer, and upon the theory of the bill, a party to be compelled to make payment into his own official hands, through suit by the attorney general.

In view of the nature of the claim, I am unable to find that the state has any right, through the attorney general, to sue in equity for it. Under existing regulations, it is not in its civil aspect, a matter of state concern, but is rather a local corporate interest or right of action, subject to be sued for the county.

It has not hitherto been deemed politic, or consistent with the genius of our system, to favor a large construction of the power of the state, to directly superintend the fiscal affairs of local communities. But if, as now maintained, the state may independently intervene, and commence

and carry on a suit by and through its own officer, to collect money for a county, on the charge that such money was illegally paid out, the principle must have a very extensive operation.

As neither our laws or constitution, in terms profess to confer any such power, or impose any such duty, and the power, if it exists at all, must result from the nature of the thing, and the principles of the government, it cannot be admitted to exist without admitting a basis for it, broad enough to justify state interference in every case where it is charged that the funds of a township, or any other municipal corporation, have been illegally appropriated. The principle being settled, the attorney general, whenever a case appears to be within it, will feel bound to allow the use of his name, and in the absence of legislation to restrain and regulate the proceedings, the cases will multiply, and the practice will cause serious embarrassment and expense, without corresponding advantage. Merely local financial matters, often trivial in amount and devoid of state interest, will become common subjects of chancery litigation in this way, to test the validity or regularity of municipal action, and not seldom chiefly to gratify a litigious temper.

There are, then, in the composition of the claim, in the irrelation of the state to it, and in the consequences to be apprehended under existing conditions, from such state interference with municipal autonomy, very serious objections to the relief asked through a modification of the decree.

It may be said, however, that as the defense have not insisted upon the point, it ought to be considered as waived. This view would have weight if the question was not one implicating jurisdiction. The point relates to the title of the complainant to carry on a litigation for the object sought by the appeal, and to the authority of the court to

adjudicate on that subject in a case so constituted.   The decree cannot be so enlarged as to embrace the special relief, and compel payment into the county treasury of the funds said to have been illegally paid out, without admitting that the claim is cognizable in equity, and in a suit by the attorney general.   Upon the whole it is conceived that, in the present state of legislation, the right of the attorney general to maintain a suit in equity for the purpose sought by the appeal, is subject to grave objection, an objection not of form merely, but one that is fundamental, and not susceptible of being waived by an omission to insist upon it.

We have thus considered the case, and reached a result upon a ground which is fundamental.   But there are some peculiarities connected with the proceeding which ought not to pass without observation.   Assuming that it was competent for the attorney general officially to interpose to obtain an injunction against the commission of unauthorized corporate acts, the regular course was to proceed by information conveying the facts to the court, and not by way of complaint in supplicatory form, as in a bill.   In such cases the attorney general, as official representative of the state, undertakes to put the court in possession of facts which, when communicated in proper form, through the right official channel, impose upon the court determinate duties. He does not take the attitude or hold the language of an ordinary suitor.   His intervention is purely official.   He is not a "complainant." He does not petition. He "informs." Formerly, if the suit immediately concerned the right of the state only, the information was commonly exhibited without a relator.   But the condescension of modern practice to the rights of the defendant, has made it usual, if not necessary, to name a relator upon the face of the information, in order, and only in order, to supply some one to

26 mich.—57.

be subject to costs.   And in such cases his position resembles somewhat that of an endorser of a writ under the statute.   He is not a party *in* the cause, though, in a certain qualified sense, in the sense that he may be directly charged with costs, he may be said to be a party *to* the cause.   The suit is still exclusively the suit of the official agent, and must be prosecuted by his sanction, and be guided and controlled by his judgment.

As was well said in a recent case in Massachusetts, " the court and the public have a right to the countenance and responsibility of the law officer of the government in *directing* and *regulating the suit.*"—*Parker v. May, 5 Cush., 336.*

In accordance with the salutary general rule governing such matters, we have held in *quo warranto,* that stipulations not made by the attorney general could not be recognized as affecting the public.—*People ex rel. Chapman v. Pratt, 15 Mich., 184; Crawford v. Molitor, 23 Mich., 341.*

The English equity cases are very strict.   In *Attorney General v. Wright, 3 Beav., 447,* which was an information, the master of the rolls refused to entertain a motion noticed as made on behalf the relator; and in *Attorney General v. Barker, 4 Myl. & C., 262,* which combined an information and bill, the lord chancellor refused the relator permission to argue in person on the hearing.   These rulings were made on the precise ground that the attorney general was the only one who could be recognized, and that the relator had no standing in the cause.

In the case at bar the representation to the court is not, as it should have been, on any conceivable theory, an information, but is in the strict form of an ordinary bill, except that in the opening paragraph it names Mr. Lockwood as relator.   It purports to have been signed by him conjointly with the attorney general.   The first sentence commences with the words " your orator," but subsequently,

throughout, the expression takes the plural form of "your orators." The structure and phraseology import that the proceeding was considered as commenced and carried on as the joint bill of the attorney general and Mr. Lockwood.

The proofs appear to have been put in under a stipulation subscribed for the plaintiff by private counsel, as "solicitors for complainants," and all the proceedings down to and including the argument in this court, appear to have been conducted exclusively by the same counsel, and standing in the same relation to the suit. The inference to which the record leads is, that the attorney general had no other connection with the case than the allowance of the use of his name. We discover something in this course of procedure, quite unknown to the course and practice of the court, and amounting to more than mere irregularities of form. Whether the difficulties from this source could have been surmounted, if our view of the object of the appeal had been favorable, is somewhat doubtful. However, as an opinion on that subject is not called for, we content ourselves with the observations already made.

In view of the very unusual circumstances which mark the case, and inasmuch as we have no right to entertain the appeal to grant the special relief for which the case was brought here, in my judgment we may well dispose of the matter by dismissing the appeal, with the costs of this court against Mr. Lockwood, in lieu of affirming the decree. The consequence of that course will be that the decree of the court below will stand.

The other Justices concurred.