**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JANUARY 31, 2002**

*In re* CERTIFIED QUESTION FROM
THE U.S. DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

---

WAYNE COUNTY,

    Plaintiff,

v                                                     No. 118261

PHILIP MORRIS INCORPORATED, et
al,

    Defendants,

and

JENNIFER GRANHOLM, ATTORNEY
GENERAL, ex rel, THE STATE OF
MICHIGAN,

    Intervening Defendant.

---

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

    The Michigan Attorney General brought suit against numerous tobacco companies, alleging claims for damages

incurred in providing health care services to smokers. This suit resulted in a master settlement agreement (MSA), in which the state released its claims and its subdivisions' claims, in exchange for injunctive and monetary relief. Two years later, Wayne County filed suit against the same tobacco companies, also alleging claims for damages incurred in providing health care services to smokers. Defendants filed a motion for judgment on the pleadings, arguing that the county's claims had been released by the MSA or, alternatively, that they were barred by the doctrine of res judicata. The United States District Court for the Eastern District of Michigan, Judge Paul Borman, stayed the proceedings and certified the following question to this Court[1]:

> Does the Michigan Attorney General have the authority to bind/release claims of a Michigan county as part of a settlement agreement in an action that the Attorney General brought on behalf of the State of Michigan?

Having heard oral argument, this Court answers that question in the affirmative.

---

[1] MCR 7.305(B)(1) provides:

> When a federal court . . . considers a question that Michigan law may resolve and that is not controlled by Michigan Supreme Court precedent, the court may on its own initiative or that of an interested party certify the question to the Michigan Supreme Court.

2

## I. FACTS AND PROCEEDINGS

In 1996, the Attorney General, on behalf of the people of Michigan, sued numerous tobacco companies, seeking injunctive and monetary relief to redress harm to the public health resulting from defendants' conduct. See *Attorney General v Philip Morris, Inc,* Ingham Cir Ct No 96-84281-CZ. The state asserted five claims for relief: (1) violations of the Michigan Consumer Protection Act, MCL 445.901 *et seq.;* (2) violation of the Michigan Antitrust Reform Act, MCL 445.771 *et seq.;* (3) restitution based upon unjust enrichment; (4) indemnity; and (5) breach of duty voluntarily undertaken. In 1998, that case was settled without any of the state's claims being determined on the merits. Defendants and the attorneys general of forty-six states, including Michigan, entered into a master settlement agreement. Defendants agreed to pay Michigan approximately $8.9 billion over a period of twenty-five years and to enter into a consent decree containing broad injunctive provisions. The MSA also provided for a release and covenant not to sue defendants for a broad range of claims. The release defined the "Releasing Parties" as the settling states and their subdivisions, including counties. Finally, the MSA contained an offset provision that afforded defendants the right to offset any subsequent

3

recovery by a state subdivision against future payments to the settling state. After concluding that the MSA was in the best interests of Michigan, the circuit court approved the consent decree and ordered that the state's complaint be dismissed with prejudice.

In 1999, Wayne County filed an action in the Wayne Circuit Court against the same tobacco companies. The county asserted five claims for relief: (1) unreasonable restraint of trade, in violation of the Michigan Antitrust Reform Act, MCL 445.772; (2) public nuisance; (3) negligent entrustment; (4) the undertaking of, and the wilful failure to perform, a special duty; and (5) conspiracy. Defendants removed the case to the United States District Court for the Eastern District of Michigan on the basis of diversity of citizenship jurisdiction, and filed a motion for judgment on the pleadings. The federal district court determined that defendants are "Released Parties" and that the claims brought by Wayne County are "Released Claims" as defined by the MSA.[2]

_____

[2] The Master Settlement Agreement, § XII(a), provides:

(a) Release

(1) Upon the occurrence of State-Specific Finality in a Settling State, such Settling State shall absolutely and unconditionally release and forever discharge all Released Parties from all Released Claims that the Releasing Parties directly, indirectly, derivatively or in any other

4

The remaining issue is whether Wayne County is a "Releasing Party."[3] The federal district court stayed the proceedings and certified the following question to this Court:

> Does the Michigan Attorney General have the authority to bind/release claims of a Michigan county as part of a settlement agreement in an action that the Attorney General brought on behalf of the State of Michigan?

In order to assist this Court in deciding whether to answer

---

> capacity ever had, now have, or hereafter can, shall or may have.
>
> * * *
>
> (3) Each Settling State (for itself and for the Releasing Parties) further covenants and agrees that it (and the Releasing Parties) shall not after the occurrence of State-Specific Finality sue or seek to establish civil liability against any Released Party based, in whole or in part, upon any of the Released Claims, and further agrees that such covenant and agreement shall be a complete defense to any such civil action or proceeding.

[3] The Master Settlement Agreement, § II, defines "Releasing Parties" as

> each Settling State and any of its past, present, and future agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions; and also means, to the full extent of the power of the signatories here to release past, present and future claims, the following: (1) any Settling State's subdivisions (political or otherwise, including but not limited to municipalities, counties, parishes, villages, unincorporated districts and hospital districts), public entities, public instrumentalities and public educational institutions . . . .

5

the certified question, we granted the Attorney General's motion to intervene, ordered the parties to file supplemental briefs, and held oral argument. 622 NW2d 518 (Mich, 2001).

## II. Analysis

### A. THE AUTHORITY OF THE COUNTY

The 1963 Michigan Constitution at art 7, § 1,[4] provides for the creation of counties and endows the Legislature with the authority to establish county powers and immunities. Pursuant to art 7, § 1, the Michigan Legislature at MCL 45.3 has granted each of the state's counties the power to sue and to be sued.[5] The Legislature has also granted to counties the general authority to sue when injured by an act in violation of the antitrust statute. MCL 445.778. Further, the Michigan Constitution instructs "[t]he provisions of this constitution and law concerning counties . . . shall be liberally construed in their favor. Powers granted to counties . . . by this constitution and by law shall include those fairly implied and not prohibited by this constitution." Const 1963, art 7, § 34.

---

[4] "Each organized county shall be a body corporate with powers and immunities provided by law."

[5] "Each organized county shall be a body politic and corporate, for the following purposes, that is to say: To sue and be sued . . . and to do all other necessary acts in relation to the property and concerns of the county."

6

## B. THE AUTHORITY OF THE ATTORNEY GENERAL

We next turn to the powers of the Attorney General. The most basic purpose of her office is to litigate matters on behalf of the people of the state. Accordingly, it is widely acknowledged that Michigan's Attorney General has broad authority to bring actions that are in the interest of the state of Michigan. *Michigan ex rel Kelley v CR Equipment Sales, Inc*, 898 F Supp 509, 513 (WD Mich, 1995); see *Mundy v McDonald*, 216 Mich 444, 450-451; 185 NW 877 (1921). Specifically, MCL 14.28 provides:

> The attorney general shall prosecute and defend all actions in the supreme court, in which the state shall be interested, or a party . . . and . . . *may, when in his own judgment the interests of the state require it*, intervene in and appear for the people of this state in any other court or tribunal, in any cause or matter, civil or criminal, in which the people of this state may be a party or interested. [Emphasis added.]

This statute has been interpreted to allow the Attorney General to *initiate* actions as well. *CR Equipment Sales* at 514. This Court has concluded:

> While a distinction may be drawn between intervening in a proceeding and instituting a suit[,] there is merger of purpose, by reason of public policy, when the interests of the State call for action by its chief law officer and there is no express legislative restriction to the contrary. [*In re Lewis Estate*, 287 Mich 179, 184; 283 NW 21 (1938).]

Moreover, MCL 14.28 has been broadly construed to provide

7

authority for the Attorney General to litigate on behalf of the people of the state. *Mundy* at 450-451. See also *Michigan State Chiropractic Ass'n v Kelley,* 79 Mich App 789, 791; 262 NW2d 676 (1977). The Legislature also authorized the Attorney General to intervene at any stage of a proceeding and granted her the same rights possessed by other parties to a suit.[6] Accordingly, the Attorney General had the necessary statutory authority to litigate on behalf of the people of the state in the present case.

However, although the Attorney General has the authority to intervene in and to initiate litigation on behalf of the state, such authority is limited to matters of state interest. *Attorney General ex rel Lockwood v Moliter,* 26 Mich 444, 447 (1873). Just as the authority of counties to sue in matters of local interest cannot be used to undermine the authority of

---

[6] MCL 14.101 provides:

> The Attorney General of the State is hereby authorized and empowered to intervene in any action heretofore or hereafter commenced in any court of the State whenever such intervention is necessary in order to protect any right or interest of the State, or of the people of the State. Such right of intervention shall exist at any stage of the proceeding, and the Attorney General shall have the same right to prosecute an appeal, or to apply for a re-hearing or to take any other action or step whatsoever that is had or possessed by any of the parties to such litigation.

8

the state to sue in matters of state interest, the authority of the state to sue in matters of state interest cannot be used to undermine the authority of political subdivisions to sue in matters solely of local interest. As was stated so well by Justice Cooley, "it is inconsistent with local institutions, as they have always existed in this country, that the local community should be coerced by the State in matters of purely local convenience . . . ." Cooley, Constitutional Law, p 345. This is even more true today, in light of the grant of home rule authority to counties in the Constitution of 1963.

Because the Attorney General possesses the authority to sue on behalf of the state in matters of state interest, it follows that the Attorney General necessarily has the authority to sue on behalf of the state's political subdivisions in matters of state interest. *CR Equipment Sales* at 514. In *CR Equipment Sales,* the United States District Court for the Western District of Michigan concluded that the Michigan Attorney General possessed the authority to bring an action on behalf of several hundred school districts across the state. The court reasoned that such an action was not an action on behalf of a single unit of local government, but rather involved the general state interest. We agree with

9

this reasoning. The Attorney General of Michigan possesses the authority to represent the interests of the people of Michigan, and thus the Attorney General has the authority as part of this representation to represent the people of a county who are a part of these same people. Thus, although the Attorney General cannot sue on behalf of a county in a matter solely of local interest, the Attorney General can sue on behalf of a county in a matter of state interest.

Next, inherent in the Attorney General's authority to sue on behalf of a county in matters of state interest, is the Attorney General's authority to settle such a suit. Given that the Attorney General has the authority to bring claims, it inevitably follows that the Attorney General has the authority to settle and release such claims.[7] It is said that the Attorney General "may control and manage all litigation in behalf of the state and is empowered to make any disposition of the state's litigation which [the Attorney General] deems

---

[7] As the Oklahoma Supreme Court has stated:

> As an incident to the dominion the Attorney General possesses over every suit instituted in his official capacity, he has the power to dismiss, abandon, discontinue, or compromise suits brought by him either with or without a stipulation by the other party and to make any disposition of such suits as he deems best for the interest of the state. [*Oklahoma ex rel Derryberry v Kerr-McGee Corp*, 516 P2d 813, 818 (1973).]

10

for its best interests." 7 Am Jur 2d, Attorney General § 27, p 26. Accordingly, while counties have broad authority to sue and settle with regard to matters of local interest, the Attorney General has broad authority to sue and settle with regard to matters of state interest, including the power to settle such litigation with binding effect on Michigan's political subdivisions.

In determining what constitutes a state interest for the purpose of deciding whether to initiate litigation, the Attorney General has broad statutory discretion: MCL 14.28 explicitly provides that the Attorney General may become involved in litigation "when *in his own judgment* the interests of the state require it . . . ." See also MCL 14.101; *Mundy* at 450-451. In sum, the Attorney General has the authority to bring actions involving matters of state interest, and the courts should accord substantial deference to the Attorney General's decision that a matter constitutes a state interest.

On the bases of these principles, we, therefore, conclude that the Attorney General has the authority to bring suit on behalf of political subdivisions where there is an issue of state interest.

### C. Balancing County and State Authority

The county's argument that it has the exclusive authority

11

to bring suit must fail.  We acknowledge that in some instances, a county has the exclusive authority to sue, but that issue is not presented where, as here, the claims asserted by the county may be of state interest.

Further, the structure of the constitution requires an acknowledgment that, in this case and others where the state expresses its position on issues clearly of state interest, subdivisions are subordinate to the state's position.  We note that the constitution vested even more power in the counties after the most recent revision in 1963, and the laws of this state provide counties with extensive powers.  However, the structure of the sovereign state and the constitutional and statutory powers granted to the Attorney General dictate that the county is ultimately subordinate to the state where, as here, the Attorney General acted to bind the state as a whole in a matter clearly of state interest.  Thus, the law establishes that where the Attorney General has acted to limit the power of the counties to sue where an issue is of state interest, the county may not act to defeat the state's clear intentions.

### III. Conclusion

For the foregoing reasons, we answer the certified question in the affirmative.  The Attorney General has the authority to release potential claims of Michigan counties as

12

part of a settlement agreement in an action that the Attorney General brings on behalf of the state of Michigan where that action involves matters of state interest.  Having answered the certified question, we now return the matter to the United States District Court for such further proceedings as that court deems appropriate.

CORRIGAN, C.J., and WEAVER, KELLY, TAYLOR, YOUNG, and MARKMAN, JJ., concurred with CAVANAGH, J.