WEAVER, J.
(dissenting). I dissent from the majority’s holding that the Attorney General may not intervene in this case involving cost recovery for environmental contamination caused by defendant, Oakland County Road Commission. The majority’s holding imposes unprecedented and unsupportable limitations on the Attorney General’s ability to defend the interests of the people of the state of Michigan and to defend the interests of the Michigan Department of Environmental Quality (MDEQ) in the enforcement of Michigan law.
*298 I also dissent from the majority’s unprecedented narrowing of who is an “aggrieved party” for the purpose of invoking the appellate jurisdiction of this Court. The question of what constitutes an “aggrieved party” was not raised or briefed by the parties. Yet by reference to inapplicable federal law, the majority redefines who is an “aggrieved party,” stating:
[T]o have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court’s power. The only difference is a litigant on appeal must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underlying facts of the case. [Ante at 291-292.]
With this holding, the majority expands its novel standing theory adopted in Nat’l Wildlife Federation v Cleveland Cliffs Iron Co, 471 Mich 608; 684 NW2d 800 (2004), by applying it to parties seeking to invoke this Court’s appellate jurisdiction.
In this case on July 13, 2004, the Court of Appeals held that plaintiffs cost-recovery action against defendant was barred by MCL 324.20140(1), the statute of limitations of the Natural Resources and Environmental Protection Act (NREPA).[1] After the Court of Appeals rendered its decision, the Attorney General filed his motion to intervene on behalf of the people of Michigan and the MDEQ. Within the period specified for appeals,[2] the Attorney General appealed the decision of the Court of Appeals in this Court.
In response to the Attorney General’s application, defendant Oakland County Road Commission challenges the Attorney General’s standing to intervene in *299 the case.[3] This Court granted the Attorney General’s application, directing the parties to include among the issues to be briefed:
(1) whether the work initiated in 1991 was an “interim response activity” that did not trigger the statute of limitations provision set out in MCL 324.20140(l)(a) rather than a “remedial action” that must first be “approved or selected” by the Department of Environmental Quality; and (2) whether the initiation of work for one release of hazardous substances begins the running of the period of limitations for any subsequent or unrelated release of hazardous substances. [472 Mich 898 (2005).]
No reference was made in this Court’s grant order regarding whether the Attorney General represents an “aggrieved party.”
I would hold that once the Attorney General intervened, he possessed the same right to appeal the decision of the Court of Appeals that was had or possessed by any party.[4] At the time the Attorney General appealed, plaintiff, Federated, still possessed the right to appeal from the decision of the Court of Appeals. Contrary to the conclusion of the majority, it is irrelevant to the authority of the Attorney General to maintain this appeal on behalf of the people and the MDEQ that Federated did not also perfect an appeal in a timely manner.
I would hold that upon his proper intervention and timely appeal, the Attorney General had the authority to represent the people of Michigan and the MDEQ because both parties are “aggrieved parties” within the traditional understanding of the term. With its decision today, however, the majority not only imposes unprec *300 edented limits on the authority of the Attorney General to perform his statutory obligations, it also redefines and narrows who will be deemed an “aggrieved party” for the purposes of invoking appellate court jurisdiction.
For the reasons below, I would reverse the decision of the Court of Appeals because the Attorney General has the authority to represent the people of Michigan and the MDEQ in this appeal. Further, I would hold that the cost-recovery action was not barred by MCL 324.20140(1).
I
The law enacted by the Legislature is very clear regarding the power of the Attorney General to litigate on behalf of the interests of the people of Michigan. Pursuant to MCL 14.28, the Attorney General may,
when in his own judgment the interests of the state require it, intervene in and appear for the people of this state in any other court or tribunal, in any cause or matter, civil or criminal, in which the people of this state may be a party or interested.[5]
*301 MCL 14.101 provides that the Attorney General’s power to intervene exists
at any stage of the proceeding, and the Attorney General shall have the same right to prosecute an appeal, or to apply for a re-hearing or to take any other action or step whatsoever that is had or possessed by any of the parties to such litigation.[6]
This Court, including the members of this majority, has broadly construed the authority of the Attorney General to litigate on behalf of the people of the state. In re Certified Question (Wayne Co v Phillip Morris, Inc), 465 Mich 537, 543-545; 638 NW2d 409 (2002); Mundy v McDonald, 216 Mich 444, 450-451; 185 NW 877 (1921). This Court, including this majority, has stated that “courts should accord substantial deference to the Attorney General’s decision that a matter constitutes a state interest.” In re Certified Question, supra at 547.
Until this majority’s decision today, the only limitations on the Attorney General’s power to intervene have been that the intervention must advance a state, rather than a merely local, interest,[6]
[7] and the Attorney General’s intervention must not be “clearly inimical to the public interest... .”[8] But now this majority ignores *302 its own precedent and the express statutory authority provided by MCL 14.101 that permits the Attorney General to intervene on behalf of a state interest at any time. The majority legislates from the bench a new restriction on the Attorney General’s authority to intervene by premising it on a losing party’s decision to pursue or not pursue an appeal.
The majority declares that without a losing party, there is no justiciable controversy. But as this Court stated in Mundy, supra at 451, “It is too narrow a view of the case to say that the people of this State are not interested in the defense in a case of this nature, which involves the purely legal question . ...” Mundy, supra, involved an action for libel against a circuit judge. The Attorney General intervened and filed a motion to dismiss the case on the grounds that the judge was acting in his official capacity when the allegedly libelous statement was made. The party alleging libel against the judge challenged the Attorney General’s authority to intervene to address a purely legal question. This Court in Mundy, supra at 451, affirmed the authority of the Attorney General to intervene and stated:
Certainly if the people of the State can be said to be interested in a criminal proceeding, they are, we think, equally interested in this action growing out of it, depending as it does entirely upon whether the acts of the defendant complained of were judicial acts.
In this case, the legal issue involves the proper interpretation of a statute of limitations within the NREPA. The resolution of this question affects the proper allocation of costs for response activities for environmental contamination. The Legislature has very clearly provided that a person who causes environmental contamination should pay for its cleanup. MCL 324.20102(f) provides that “liability for response activities to address *303 environmental contamination should be imposed upon those persons who are responsible for the environmental contamination.” The logic of Mundy is decisive in this case: Because the people of Michigan through their Legislature have expressed an interest in the proper allocation of response activity costs for environmental cleanup, it is “too narrow a view” to conclude that the people would not also be interested in the proper interpretation of a statute that affects the allocation of those costs. The majority’s attempt to distinguish Mundy on the ground that the Attorney General represented an “actual party” in that case is unpersuasive. The majority fails to grasp that the people of Michigan became an “actual party” once the Attorney General intervened in a timely manner on their behalf.
I would conclude that the Attorney General may intervene on behalf of the people of Michigan to seek a proper interpretation of state law.
ii
In addition to having the authority to intervene on behalf of the people of Michigan, the Attorney General has the authority to intervene in this matter on behalf of the MDEQ. The MDEQ is a department of the executive branch. MCL 14.29 provides that “[i]t shall be the duty of the attorney general, at the request of the governor ... to prosecute and defend all suits relating to matters connected with [the Governor’s] departments.”
This Court, including the members of this majority, has specifically recognized that the Attorney General’s authority to litigate in matters of state interest necessarily includes the authority to litigate “on behalf of the state’s political subdivisions in matters of state interest.” In re Certified Question, supra at 545, citing *304 Michigan ex rel Kelley v CR Equip Sales, Inc, 898 F Supp 509, 514 (WD Mich, 1995). Further, the NREPA expressly provides that the Attorney General may commence a civil action “on behalf of the state” seeking relief, including “[a]ny other relief necessary for the enforcement of this part.” MCL 324.20137(l)(k).[9] The *305 majority’s opinion, however, fails to recognize or analyze the interest of the MDEQ in this case.
The MDEQ has a tangible interest in the resolution of this case. In 1995, the MDEQ notified defendant, Oakland County Road Commission, that the department had identified and confirmed a release of “free product”[10] from an underground storage tank on defendant’s property that had migrated to plaintiffs property. The MDEQ’s letter refers to plaintiffs property as the CMS “facility.” [11] The MDEQ letter states that the treatment system constructed to remediate the plaintiffs 1988 separate release of hazardous substances at the CMS facility had been activated in August 1992. The system had removed hazardous substances associated with the plaintiffs release at the CMS facility through approximately June 1993. The letter indicates that from January 1994 through September 1994, no hazardous substances had been observed in the plaintiffs treatment system.
*306 However, in November 1994, the letter states that the CMS treatment system encountered hazardous substances again. After an investigation by the department staff, it was confirmed that the hazardous substances appearing in CMS’s treatment system were different in kind from that which had been released by the plaintiff. The investigation confirmed that the new hazardous substances that had appeared in plaintiffs treatment system derived from a separate release from defendant’s facility.
The record does not suggest that the MDEQ’s investigation of the separate release from defendant’s facility is complete. Indeed, the letter recommends that several actions be taken by defendant to address the hazardous substances, and that remedial action for the confirmed April 5, 1991, release at the defendant’s facility be continued. The letter recommends that remedial actions taken by the defendant be coordinated with those already occurring at the CMS facility. The letter also provides that the letter “should not be construed as a sign-off on all site investigations or corrective actions that may be required at [defendant’s] site.” In other words, the MDEQ has an interest in ongoing investigations and remediation of environmental contamination from defendant’s facility.
The MDEQ’s interest in this case derives from its enforcement responsibility under the NREPA.[12] The NREPA provides that the owner or operator of a facility “is responsible for an activity causing a release” of hazardous substances into the environment. MCL 324.20126(l)(a). MCL 324.20126a(l) provides that a person who is liable for a release is jointly and severally liable for the following:
*307 (a) All costs of response activity lawfully incurred by the state relating to the selection and implementation of response activity....
Ob) Any other necessary costs of response activity incurred by any other person consistent with rules relating to the selection and implementation of response activity promulgate under this part.
(c) Damages for the full value of injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing the injury, destruction, or loss resulting from the release.
The letter from the MDEQ to defendant reveals that there was a confirmed release of hazardous substances into the environment at defendant’s facility in April 1991, but that the release from defendant’s facility did not appear in plaintiffs treatment system until November 1994. Under the NREPA, defendant is jointly and severally liable for the costs associated with defendant’s release. MCL 324.20126a(l). The MDEQ is and should be interested in the proper enforcement of the NREPA against defendant.
The Court of Appeals, however, concluded that this cost-recovery action against defendant was barred by the statute of limitations because more than six years had passed since plaintiff began construction of its treatment system in November 1991. The NREPA statute of limitations at issue provides that the period of limitations
[f]or the recovery of response activity costs and natural resources damages pursuant to section 20126a(l)(a), (b), or (c), [is] wdthin 6 years of initiation of physical on-site construction activities for the remedial action selected or approved by the department at a facility.... [MCL 324.20140(l)(a).]
*308 Plaintiff initiated its cost-recovery action against defendant in November 2000, within six years from the date that it was confirmed that defendant’s separate release had comingled with plaintiffs. The Attorney General, on behalf of the MDEQ, argues that the Court of Appeals conclusion that the period ran from November 1991, before plaintiff was even aware of defendant’s separate release, was wrong. Therefore, the Attorney General intervened on behalf of the MDEQ and filed this timely application for leave to appeal.
The Attorney General has the authority to represent the MDEQ’s interest in challenging the Court of Appeals interpretation of the NREPA statute of limitations. The MDEQ is conducting an ongoing investigation into the separate release of hazardous substances for which defendant is liable at defendant’s separate facility. There is no evidence in the record that there has been any “initiation of physical on-site construction activities for the remedial action selected or approved by the department” at defendant’s facility.[13] It is notable that plaintiffs treatment facility was constructed to remediate the contamination caused by plaintiff at plaintiffs separate facility. It defies common sense to commence the running of the period of limitations from the initiation of construction activities at plaintiffs facility, when those activities preceded any confirmation of and perhaps even any actual comingling of hazardous substances from defendant’s separate release and facility.
The majority fails to analyze the independent interest of the MDEQ in this matter. Instead, it ignores it and suggests that the Attorney General’s authority to intervene must be predicated on a losing party’s decision to appeal. This reasoning ignores this Court’s prior *309 case law that recognized that the interest of a state department in the subject matter of a lawsuit justifies the Attorney General’s participation in the suit on behalf of that department.
In Russell v Peoples Wayne Co Bank of Dearborn, 275 Mich 415; 266 NW 401 (1936), this Court held that the Attorney General could intervene on behalf of the state banking commissioner in a matter involving agreements for the liquidation of certain banks. The state banking commissioner had approved the agreements, but when a dispute later arose between the parties, the Attorney General intervened on behalf of the banking commissioner. This Court rejected a challenge to the authority of the Attorney General to intervene, stating:
[T]he suits at bar grew out of the mentioned agreements, approved by the banking commissioner, and assertion of right by the Reconstruction Finance Corporation as a creditor and, therefore, the State, through its banking commissioner, with power over banks and banking, had an interest in the subject-matter of the litigation.
The liquidation by agreement was consented to by the banking commissioner and, inasmuch as liquidation of a State bank is under control of the banking commissioner, when plaintiff sought by the suit for the appointment of liquidating receivers rather than under the approved agreements, the banking commissioner was again a party in interest.
The attorney general not only had a right to intervene but to move to dismiss the bills for want of jurisdiction in the court to appoint a receiver. [Russell, supra at 418-419.]
As in Russell, I would hold that the Attorney General has the authority to intervene and represent the interests of the MDEQ in this case. The majority’s attempt to distinguish Russell on the ground that the Attorney General in that case represented an “actual party” *310 again misses the mark, because in this case the MDEQ was an actual party once the Attorney General intervened.
The people, through the Legislature, have expressed in the NREPA a strong interest in appropriate response activities with respect to releases of hazardous substances[14] and in the proper allocation of liability[15] for such releases. With respect to the allocation of response activity costs, MCL 324.20102(f) provides that “liability for response activities to address environmental contamination should be imposed upon those persons who are responsible for the environmental contamination.” The statute further provides at MCL 324.20126a(7) that the “costs recoverable under this section may be recovered in an action brought by the state or any other person.”
The MDEQ is charged with the enforcement of the NREPA.[16] The Attorney General, on behalf of the MDEQ, has standing to challenge the Court of Appeals interpretation of the six-year statute of limitations at issue in this case. The Court of Appeals holding that the *311 limitations period commenced running when plaintiff began construction of a treatment system fails to recognize that plaintiffs construction began before plaintiff was even aware of the release at defendant’s site and years before comingling of defendant’s release with the plaintiffs was confirmed by the MDEQ. The Court of Appeals interpretation of the statute of limitations at issue undermines the MDEQ’s ability to enforce the NREPA’s cost-recovery provisions against defendant.
hi
Even though the specific issue of who qualifies as an “aggrieved party” was not raised or briefed by the parties, the majority chooses this case to redefine and limit who is an “aggrieved party” for the purpose of invoking appellate court jurisdiction.[17] The majority uses this case to expand the erroneous standing theory that it adopted in Nat’l Wildlife, supra,[18] by applying it *312 to parties appealing from a trial court judgment. The majority requires that to have the right to appeal, a party must be an “aggrieved party,” and to be “aggrieved”
a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court’s power. The only difference is a litigant on appeal must demonstrate an injuiy arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underlying facts of the case. [Ante at 291-292.]
For this new test, the majority cites two inapplicable federal cases that address the limitation on federal court jurisdiction imposed by the case or controversy requirement of the federal constitution, art III, § 2. In Nat’l Wildlife, the same majority superimposed the same inapplicable federal constitutional constraints on the standing of Michigan citizens in state court actions. As I previously addressed in Nat’l Wildlife, art III, § 2 constraints do not apply to state court jurisdiction. See Nat’l Wildlife, supra at 660-661 (WEAVER, J., concurring in result only.) This is true at both the trial court and appellate court levels.
The majority’s redefinition of “aggrieved party” to require a “concrete and particularized injury” imposes a higher threshold than this Court’s previous articulations of “aggrieved party.” This Court has previously held that to be an “aggrieved party” simply requires that a party have some interest, “pecuniary or other *313 wise,” in the subject matter of a case. See In re Critchell’s Estate, 361 Mich 432, 450; 105 NW2d 417 (1960). In re Critchell recognized that an interest may be something other than pecuniary, for example, in cases involving the adoption of a child. Id. at 449, citing In re Draime, 356 Mich 368; 97 NW2d 115 (1959). The majority’s new test for invoking appellate jurisdiction unnecessarily heightens the burden of all parties who pursue an appeal.
The majority’s decision severely erodes the authority of the Attorney General to defend state interests in this Court. Without analysis, the majority concludes that neither the MDEQ nor the people of the state of Michigan are aggrieved by the decision of the Court of Appeals under the majority’s new test. The majority implies that the people of Michigan and the MDEQ’s interests are “tangential” and declares that despite the Attorney General’s timely and proper intervention on behalf of state interests in this case, the Attorney General cannot appeal to this Court unless a losing party also files a timely appeal. The majority states:
To the extent one might read MCL 14.101 or MCL 14.28 as allowing the Attorney General to prosecute an appeal from a lower court ruling without the losing party below also appealing, and without the Attorney General himself being or representing an aggrieved party, the statutes would exceed the Legislature’s authority because, except where expressly provided, this Court is not constitutionally authorized to hear nonjusticiable controversies. [Ante at 294-295.]
As explained in the preceding parts of this dissent, in the context of this case, the people of Michigan and the MDEQ have clear and defined interests in the outcome of this appeal. The interests of the people of Michigan and the MDEQ in this case are sufficient under Michigan’s prior case law to make them “aggrieved parties.” *314 As discussed above, both the people of Michigan and the MDEQ have some interest, pecuniary or otherwise, in the outcome of this case. See, e.g., In re Critchell, supra at 450. Further, the Attorney General intervened in a timely manner to represent those interests and has the statutory authority to “prosecute and defend all actions in the supreme court, in which the state shall be interested ... .” MCL 14.28.
Yet, the majority fails to analyze or address the state’s interests in this case. Instead, the majority opines that there is no “justiciable controversy” before this Court because Federated did not appeal properly. Ante at 294. In so holding, the majority overrules without any explanation Michigan’s longstanding precedent that recognized the Attorney General’s broad authority to intervene, prosecute, and defend matters of state interest in the Supreme Court.[19]
IV
In order to represent the interests of the people of Michigan or the MDEQ in this litigation, the majority effectively requires the Attorney General to convince another party, over whom the Attorney General has no control and who the Attorney General does not represent, to pursue an appeal. There are many reasons that a party might not pursue an appeal, and it is wrong to hinge the defense of the interests of the people of Michigan and those of the MDEQ on the decisions or strategies of another party. Moreover, it is wrong for the majority to use this case to limit who is an “aggrieved party” for the purpose of invoking appellate court *315 jurisdiction, especially since the definition of “aggrieved party” was neither raised nor briefed by the parties.
For these reasons, I dissent and would hold that the Attorney General has the authority, on behalf of the people of Michigan and on behalf of the MDEQ, to pursue this appeal.
CAVANAGH and KELLY, JJ., concurred with WEAVER, J.

 Federated, Ins Co v Oakland Co Rd Comm, 263 Mich App 62; 687 NW2d 329 (2004).

 MCR 7.302(C).

 Federated Insurance Company filed an untimely cross-application for leave to appeal, which this Court denied. 472 Mich 898 (2005).

 MCL 14.101.

 MCL 14.28 states in full:
The attorney general shall prosecute and defend all actions in the supreme court, in which the state shall be interested, or a party; he may, in his discretion, designate one of the assistant attorneys general to be known as the solicitor general, who, under his direction, shall have charge of such causes in the supreme court and shall perform such other duties as may be assigned to him; and the attorney general shall also, when requested by the governor, or either branch of the legislature, and may, when in his own judgment the interests of the state require it, intervene in and appear for the people of this state in any other court or tribunal, in any cause or matter, civil or criminal, in which the people of this state may be a party or interested.

 MCL 14.101 states in full:
The Attorney General of the State is hereby authorized and empowered to intervene in any action heretofore or hereafter commenced in any court of the State whenever such intervention is necessary in order to protect any right or interest of the State, or of the people of the State. Such right of intervention shall exist at any stage of the proceeding, and the Attorney General shall have the same right to prosecute an appeal, or to apply for a rehearing or to take any other action or step whatsoever that is had or possessed by any of the parties to such litigation.

 Attorney General ex rel Lockwood v Moliter, 26 Mich 444, 447 (1873).

 People v Johnston, 326 Mich 213, 217; 40 NW2d 124 (1949).

 MCL 324.20137(1) provides in full:
In addition to other relief authorized by law, the attorney general may, on behalf of the state, commence a civil action seeking 1 or more of the following:
(a) Temporary or permanent injunctive relief necessary to protect the public health, safety, or welfare, or the environment from the release or threat of release.
(b) Recovery of state response activity costs pursuant to section 20126a.
(c) Damages for the full value of injury to, destruction of, or loss of natural resources resulting from the release or threat of release, including the reasonable costs of assessing the injury, destruction, or loss resulting from the release or threat of release.
(d) A declaratory judgment on liability for future response costs and damages.
(e) A civil fine of not more than $1,000.00 for each day of noncompliance without sufficient cause with a written request of the department pursuant to section 20114(l)(h). A fine imposed under this subdivision shall be based on the seriousness of the violation and any good faith efforts of the person to comply with the request of the department.
(f) A civil fine of not more than $10,000.00 for each day of violation of this part or a rule promulgated under this part. A fine imposed under this subdivision shall be based upon the seriousness of the violation and any good faith efforts of the person to comply with this part or a rule promulgated under this part.
(g) A civil fine of not more than $25,000.00 for each day of violation of a judicial order or an administrative order issued pursuant to section 20119, including exemplary damages pursuant to section 20119.
*305 (h) Enforcement of an administrative order issued pursuant to section 20119.
(i) Enforcement of information gathering and entry authority pursuant to section 20117.
(j) Enforcement of the reporting requirements under section 20114(1), (3), and (6).
(k) Any other relief necessary for the enforcement of this part.

 “ ‘Free product’ means a hazardous substance in a liquid phase equal to or greater than Vs inch of measurable thickness that is not dissolved in water and that has been released into the environment.” MCL 324.20101(r).

 “ ‘Facility’ means any area, place, or property where a hazardous substance in excess of the concentrations which satisfy the requirements of section 20120a(l) or (17) or the cleanup criteria for unrestricted residential use under part 213 has been released, deposited, disposed of, or otherwise comes to be located.” MCL 324.20101(o).

 MCL 324.20102(m).

 MCL 324.20140(l)(a).

 MCL 324.20102(c) provides:
That it is the purpose of this part to provide for appropriate response activity to eliminate unacceptable risks to public health, safety, and welfare, or to the environment from environmental contamination at facilities within the state.

 MCL 324.20102(e) provides:
That the responsibility for the cost of response activities pertaining to a release or threat of release and repairing injury, destruction, or loss to natural resources caused by a release or threat of release should not be placed upon the public except when funds cannot be collected from, or a response activity cannot be undertaken by, a person liable under this part.

 MCL 324.20102(m).

 Even though the jurisdiction of the Court of Appeals is not at issue in this case, the majority seizes this opportunity to also redefine who qualifies as an “aggrieved party” under MCR 7.203(A), the court rule defining the jurisdiction of the Court of Appeals. At issue in this case, however, is this Court’s jurisdiction over appeals. This Court’s jurisdiction is governed by MCR 7.301(A). In relevant part, MCR 7.301(A)(2) simply provides that “[t]he Supreme Court may. .. review by appeal a case ... after decision by the Court of Appeals.” The applicable court rule thus provides no foundation for the majority’s holding in this case.

 In Nat’l Wildlife, the same majority of four overruled 30 years of precedent when it held that the Legislature may not confer standing on “any person” under the Michigan environmental protection act (MEPA), MCL 324.1701 et seq. Under the majority’s Nat’l Wildlife decision, citizen standing is controlled by a test the majority imported from federal law and that is premised on federal constitutional provisions that do not exist in Michigan. As I stated in Nat’l Wildlife, supra at 654:
While pretending to limit its “judicial power,” the majority’s application of Lee’s judicial standing test in this case actually expands the power of the judiciary at the expense of the Legisla *312 ture by undermining the Legislature’s constitutional authority to enact laws that protect natural resources. [Weaver, J., concurring in result only.]
In this case, the majority further expands its judicial power, this time at the expense of the power properly vested in the Attorney General as representative of the executive branch and the people of Michigan.

 See, e.g., In re Certified Question, supra; People v Johnston, supra; Mundy, supra; Attorney General ex rel Lockwood, supra; Russell, supra.